This afternoon is Chandler v. Department of Veterans Affairs. Mr. Austin, thank you, Your Honor. May it please the Court. The Veterans Court erred in concluding that Mr. Chandler was entitled to enhanced pension benefits pursuant to Sections 1513A and 1521B of Title 38, notwithstanding that he was unable to satisfy the Section 1521B criteria that he had, quote, a disability rating as permanent and total, end quote. The Veterans Court erred in two primary respects. First, the Veterans Court erred in relying upon its previous decision in Partness because Partness was incorrectly decided. Second, the Veterans Court compounded the error in Partness by incorrectly interpreting 38 U.S.C. Section 1513B in a stringent effort to reconcile Section 1513B with the Hartness decision. The Court in Hartness erred in conflating the words, quote, other than the permanent and total disability requirement, end quote, in Section 1513A to exempt not only, one, the requirement for entitlement to basic pension benefits pursuant to Section 1521A, which uses the language permanently and totally disabled, but also to try to exempt the Section 1521E requirement that a veteran have, quote, a disability rating as permanent and total, end quote, for entitlement to Section 1521E enhanced benefits. Mr. Austin, you need to help us with the Court's determination that permanent and total appearing as it does at different places in the statute should be given similar readings. And your argument, of course, will require us to read it with a different meaning in 1521A than we give it in 1521E. That's correct, Your Honor. And the reason for that is that if you look at the language that's exempted in Section 1521A, it is exempting a permanent and total disability requirement. If you look at the language in 1521A, there is a permanent and total disability requirement. That, however, is not the language that's used in Section 1521E, which uses the language disability rating as permanent and total. And that is defined in the regulations under 38 CFR Section 3.151D as very – I'm sorry, 3.351D very specifically as a single permanent disability award rated as 100% disability. Is it accepted or are they disputing – as I understand it, the permanently and totally disabled language would encapsulate things that are beyond what a disability rated as permanent and total would capture. And I guess what I'm saying is don't those two sets of words already have different defined meaning quite clearly under the statute already, and isn't it really accepted by both sides? Is there any dispute over that? Because, for example, nursing home. You're in a nursing home. You qualify, don't you, under A, but not E, even though the language is identical because the statute expressly defines them to be different. Is that right? You conceivably could. Am I understanding your argument, though? You absolutely are, Your Honor. The – basically, the definition of a disability rated as permanent and total is a subset of all permanent and total disabilities. So the government's argument is the statute, even though it uses very, very similar, almost identical language, expressly actually does distinguish the meaning of the two different terms. Absolutely, Your Honor. And that is identified in the statute not only by the different languages used but by the structure of Section 1521. Section 1521 in A talks about a permanent and total disability requirement. When you go beyond subsection A to subsection B through G, you are assuming permanent and total disability. Therefore, when you get to subsection E and there's a requirement for a disability rated as permanent and total, there's an assumption to even get to whether you get enhanced benefits under Section 1521E that the claimant is already permanently and totally disabled, otherwise likely to be superfluous. I want to ask you one just aside. The government is not pursuing this what I think to be somewhat absurd argument that under B what we should do as a court is decide that a veteran who's 60% disabled should get more benefits than a veteran who's 100% disabled, meaning you've abandoned the approach that the court below took. Well, it was actually the position that we took below. But you don't advocate that here. No, we don't. I thought there was actually an admission in your brief that, yes, it is absurd. That was your word, I think, so. It is. The court called it absurd. And you've abandoned it. You recognize that that's not going to fly. We agree with the Veterans Court that if Hartness was correctly decided, the distinction made in the FAST letter, which is what I think Your Honor is referring to, would lead to an absurd result. Our position is that the reason it's an absurd result is because Hartness was incorrectly decided. Yeah, but Mr. Austin, on that point, why shouldn't you be bound by Hartness when you didn't appeal it and then you fashioned this in a FAST letter, this absurd result, in an effort to work around it? Why shouldn't we hold you to those prior decisions? Well, Your Honor, we do address this in our reply brief, and there are essentially two reasons for that. One is the language of 38 U.S.C. Section 7292A, which provides this court with jurisdiction whenever the court below relies on a specific argument, regardless of whether or not we raise the specific issue. And, in fact, the court unfortunately emphasized that point. It was an oddball decision. The second reason is that we really had no alternative here because the panel in the Chandler case was bound by the decision in Hartness. And, therefore, we couldn't argue to the panel as much as we couldn't argue to this panel, the Federal Circuit President, that the decision in Hartness was wrong. We had no choice. Now, it's true that this case in Chandler was decided by the court en banc, but we didn't have any notice of that. This case was presented to the panel in the court sui sponte without the government being aware of it deciding it en banc. So, at that point, we may have had an opportunity to. But what we were trying to do, Your Honor, is we thought Hartness was wrong from the beginning. We never agreed with the decision. We had two hopes. One was we could limit the damage or the error committed in Hartness through the FAS letter, and we now agree with the court that that was an erroneous approach because it led to the absurd result that the court pointed out. The other one was we went to Congress and tried to get legislation and are still trying to get legislation to correct the court's error in Hartness. But that hasn't happened, and as we indicated in brief, we can't draw any negative inferences because, as I'm sure the court is aware, when Congress doesn't enact legislation, it can be for a number of reasons, not necessarily that this Congress disagreed with what our interpretation is that the earlier Congress intended. But the other— Was 1513B at all an issue in Hartness? I didn't see any reference to it at all in the statutory interpretation rendered in Hartness. Was it considered at all? No, it wasn't, Your Honor. So it wasn't until maybe it was presented in this case or some later case in Hartness that you really became aware of the trouble in the statutory interpretation when you look at the whole statute and not just A? Is that the government's position? Well, 1513B was irrelevant to Hartness because Hartness— I mean, it was irrelevant to Hartness because 1513— Because he didn't qualify under both. That's right. He only had an award under Section 1513. It was when Mr. Chandler had an award under both that Section 1513B came into being, and our position with Section 1513B is that the Chandler court reveals the error in the Hartness court's decision because the language of Section 1513B says when you have an award under Section 1513 and you have an award under Section 1521, which is what Mr. Chandler has, then you get the award under 1521. Well, his award under 1521 is 1521A benefits, yet the court's award is under 1513A, which was the enhanced benefits under 1521E through 1513A. So it's a direct violation of the statutory mandate in Section 1513B, which illustrates the error in Hartness. There are other delineations in the language of this statute that are also very important, which are pointed out. Section 1513A exempts the permanent total disability requirement. It doesn't say permanent disability requirements. There clearly are two. The Hartness court, the Chandler court, and even the claimant here doesn't dispute that there's two disability requirements. Yeah, but the USC expressly states when any statute uses a singular, it could be assumed to also be a plural. It's an express definition in the United States Code. So it says requirement, but it could just as easily be requirements under the definitional section of the United States Code. It can, Your Honor. Your Honor, you're referring to 1 U.S.C. 1. That's right. As well as this court's decision in Shoresley. However, both 1 U.S.C. 1 and the Shoresley decision make clear that you have to view the singular versus plural distinction in the context, and that's precisely what we're asking the court to do here. If you look at the use of the requirement in the context of Section 1521, when you have two separate requirements in A and E, it's clear in that context that it's meaningful. It's not dispositive, as Your Honor correctly points out. But when used in context, it's clear. If they used requirements, it would be equally clear that they're talking about two separate requirements. They're not. They're talking about one. Additionally, the word additionally makes no sense in the context of Section 1521E. If you use the court's decision in hardness. Section 1521E says that you have a disability rated as permanent and total, and additionally have either an independent 60% disability or the veteran is housebound. Well, if hardness is correct, then you don't have the first requirement, so you have an additional 60% disability. Well, an additional to what? There's nothing to be additional disability to because there's no previous disability. And Mr. Chamba argues in his brief, well, it does make some sense because it's in addition to the fact that the veteran has 65 years of age, which presumes his permanent and total disability. Well, it's not an additional disability because a veteran can get Section 1513A benefits if he has no disability at all. He merely has to be age 65. And there's no presumption of permanent and total disability. It's simply that under Section 1513A, it doesn't matter whether or not you're permanent and totally disabled. We would also ask the court to look carefully at the legislative history. We believe that the legislative history strongly supports our interpretation of the statutes in this case because the legislative history demonstrates that it was supposed to be without concern to disability. That's why they were eliminating the requirement. Well, that makes no sense in the context of Section 1521E because even if they're right, even if the Hartman's decision was right, there's still a concern about disability because they still have to have a medical examination to determine whether or not they're 60% disabled, they have that, or they're housebound. So it makes no sense in the context of that legislative history, which doesn't say anything about trying to provide for the benefit, enhance benefits under Section 1521E without meeting the requirement that there be a disability rating as permanent and total. And finally, I think I'll just reserve the rest of my time for Michael Butler. Thank you. That'll be just fine. Mr. Austin. Ms. Willen. Good afternoon, Your Honors. Paige Willen, Chad Warner Park, Pro Bono Council for Pele, Howard Chandler. I'd actually like to start with something that the VA raised for the first time in its reply brief, which is a claim that several regulations that the VA has enacted require that this court defer to the VA's interpretation of Section 1513A under Chevron, the Chevron doctrine. And I just want to point out why that argument holds absolutely no water. First, the form… Well, counsel, we don't generally consider issues raised for the first time in a reply brief. I mean, isn't that the rule that we're supposed to use on appeal? I absolutely agree with you, but I think even if you were to consider it, they're wrong. Go ahead and tell us why they're wrong, but don't spend too much of your time on that. Thank you. First, they cite to four regulations. Three of those regulations have not been amended since Section 1513 was enacted, so they certainly can't be construing Section 1513A. The last one has been amended since 1513 has been enacted, but it interprets only the relationship between Section 1513A and Section 1521A. It does not speak to the question at issue in this appeal. As such, there is no regulation that the VA has, duly enacted regulation of the VA, that this court should defer to under Chevron. Ms. Volink, perhaps we could move to what I see as more the heart of the case, which is 1513B, and it says if a veteran qualifies under 1521, as Chandler does, then they get only those benefits, thereby precluding an enhancement under 1521E. How would you deal with that? You would essentially ignore that provision. Am I correct? No. 1513B applies to prevent double payment. In other words, it applies to prevent a payment under 1513 and a payment under 1521. As Mr. Austin said in his argument, Section 1513A- There's another provision that does that specifically, right? There is another provision of the U.S. Code that does refer to double pension- So we don't have to worry about that. That's already taken care of. What does 1513B do? Well, I think the other important question is what does it not do? Section 1513B refers to pay-I'm sorry, it says paid under Section 1521. Pension should be paid under Section 1521 if the veteran is duly eligible. It says nothing about how the veteran's eligibility should be determined. In other words, you can determine the eligibility with reference to 1513 and 1521 and still pay the pension only under the rate of 1521. In other words, you're not paying a dual pension. But I don't think that, as Mr. Austin said, I don't think that Section 1513B actually affects the meaning of Section 1513A, which is by itself quite clear. Section 1513A refers to Section 1521 in its entirety. It does not call out a particular subsection. It does not reference one of the two permanent and total disability requirements that are contained in Section 1521. It doesn't quote either requirement either. Instead, it uses generic language that refers to a permanent and total disability requirement. And as was noted earlier, that singular language should be construed under 1 U.S.C. Section 1 to include the plural requirements, thus referring to both requirements contained in Section 1521. Well, except we have a very specific definition of what is permanent and total under 1521A, don't we? The 1502 section with its 1502A with its four categories? You're absolutely right. The content of sections of the permanent and total disability requirement in Section 1521A is defined in 38 U.S.C. Section 1502. Notably, Section 1513, presumption of permanent and total disability for veterans over the age of 65, is not contained in Section 1502. And this is further evidence that it applies to both permanent and total disability requirements contained in Section 1521. You're going to have to explain that again because I didn't follow you. Sure. Section 38 U.S.C. Section 1502 defines the permanent and total disability requirement that's contained in Section 1521A. In other words, it lists out various ways that a veteran can meet that permanent and total disability requirement. Like being in a nursing home. Like being in a nursing home and having a certain level of disability. But you don't have to have a single disability rated as 100%. There are other things that qualify. Unemployability, etc. It's a broader provision. It is a broader provision, yes. Section 1513, on the other hand, for veterans over the age of 65, exempts both permanent and total disability requirements. And it is our position that that is why it is codified in Section 1513 and not in Section 1502. I don't follow you. Again, it seems like you're presuming the answer. I mean, you started with, well, Section 1513 exempts both. But that's the whole thing we're trying to figure out here. So that can't be your predicate. My point is that if Congress intended for the presumption that's contained in Section 1513 to apply only to Section 1521, as the VA would assert. Only to 1521A. Excuse me, yes. Only to 1521A, as the VA would assert, that Congress would have codified this presumption in Section 1502 together with the other attributes that a veteran can use. The fact that there could have been a different way that Congress could have codified this presumption doesn't seem to me to be evidence that the way that they did it doesn't mean what the government is saying it means. There was a version of an age 65 presumption that was enforced before Section 1513 was enacted. And that version, which in 1990 was repealed, was actually codified in Section 1502. So my point is that the fact that the presumption is now contained in a different section is evidence that it was not intended to just apply to Section 1521A. Is that the only change that was made to the statute? No. In fact, the previous version of the statute specifically quoted and referred to Section 1521A. Notably, this version that's contained in Section 1513 does not either quote either subsection, either A or E, and does not refer by its terms to either subsection A or subsection E. The language of A and E are quite different. You have the permanent and total disability requirement, and then you have a disability rated as permanent and total. And it goes on, of course, to tell us specifically that that requires a single disability to be rated at 100%. With those specific differences, how can we accept your reading that they are to be read nearly synonymously? We don't take the position that the two requirements in Section 1521, the one in A and the one in E, are the same requirement. That is not the case. They are two different requirements. But the language of Section 1513 is broad enough to waive both requirements, the requirement in Section 1521A and the one in subsection E, for veterans who are over the age of 65. It is not our position that those two requirements are the same. I'd like to address also the additional language that's contained in Section 1521E. Before you move away, can you go back? You gave an answer before to Chief Judge Rader's question about 1513B, and I want to make sure, and this is your heart's part of the case, so I want to make sure I understand your argument. What does 1513B mean? Because, quite frankly, when I read the Veterans Court's decision, it wasn't very palatable to me. This one sentence where they say Section 1513B prevents a veteran from collecting one pension under 1521 and a second one under 1513. Well, the double recovery argument. Then it goes on to say, but it does not prevent a veteran from receiving a higher pension under 1513. And I thought, actually it does. It does so expressly. I mean, I thought that the Veterans Court's interpretation of 1513B was contrary to the clear language of 1513B. So I'm trying to understand. You gave an answer to Judge Rader about why your argument is not just that 1513B prevents double recovery, and I want to make sure I absolutely understand your argument. Do you mind going back over that with me? I would, and I would appreciate that. That's exactly the heart of this, and that's the difficulty I have in understanding where your argument follows through. Thank you. Actually, my position is that it does act to prevent double payment. In other words, Section 1513B says for a veteran who is eligible under both, in other words, eligibility is determined with reference to both statutes, but the veteran is only paid once under 1521. Eligibility is determined, and then the veteran is paid. And in fact, if you look at, if you take, but the meaning of Section 1513B… Is a veteran ever paid under 1513? If the veteran was not eligible under both statutes, in other words, if the veteran was not eligible under 1521 at all, they would be paid under 1513. So any veteran who qualifies under A but would not independently qualify under 1521 is technically paid under 1513A, right? That's how they're paid. They're paid under 1513A. So then what this sentence says, if a veteran is eligible for both 1513A or 1513 or 1521, a pension shall be paid to the veteran only under 1521. Why doesn't that mean to the exclusion of any entitlement under 1513? It doesn't say that there is an exclusion of any entitlement under 1513. In fact, it expresses… What does only mean? I'm sorry? What does only mean? Shall be paid only under? Only one. You don't get the other one, right? Right. And the reference is to paying the pension, not to determining eligibility. I would point out that if you take hardness away, the section must mean the exact same thing. Because if you interpret section 1513A in the way that the VA would have you interpret it, in other words, decide that hardness is wrongly decided, then the statute would operate in precisely the same manner. It would prevent dual payment of both pensions. Because there would be no veteran who is eligible for a different level of pension under 1513 or under 1521. Walk through a couple of examples. A veteran who is age 65 but has zero disability would be eligible for pension under section 1513A and would be paid under section 1513A. A veteran who is, like Mr. Chandler, 60% or more disabled and was receiving pension before and has now turned 65. That veteran would be paid under section 1521 but would be eligible for the exact same pension under section 1513. Because, in the VA's interpretation, section 1513A would waive the permanent total disability requirement in section 1521A but not in section 1521E. So now Mr. Chandler is eligible only for the regular pension under both statutes. He's paid, according to the terms, only under section 1521. Same thing would occur for a veteran who is eligible at the higher housebound rate. He would still be eligible for the exact same pension once he turns 65 under both section 1521 and section 1513. So is your argument that 1513B has no meaning or no real import if we were to interpret the statute the way the government is arguing? I would say my argument is that section 1513 means the exact same thing no matter how you decide on the HARTNESS issue. Section 1513B prevents double payment whether you decide that HARTNESS is correctly decided or you decide that it's incorrectly decided. Well, why doesn't 1513B, under the government's, if we were to overturn HARTNESS, why doesn't 1513B mean, basically, why don't I interpret it as saying you apply under 1521 if someone's eligible under 1521? Basically, don't use 1513 to supersede something you're already eligible for under 1521. Because if you did, if you were to adopt the government's position that 1513A only applies to 1521A, then arguably someone could come along and say, well, you qualify under 1513A, so you're not eligible under 1521E anymore. 1513A supersedes that, and thereby, I mean, I can't imagine anyone would do this, but why isn't that what 1513B prevents? It tells you which of the two provisions should dominate when there, if both are, eligibility exists for both. I believe that there is a rule in... Please finish the question. I believe that there's a rule in veteran benefit statutes that the veteran should receive the highest benefit to which they're enabled. So I don't think that that, while that could be an interpretation of Section 1513B, I don't think that informs the meaning of it any more than the fact that there's also another provision of veterans' benefits laws that prevents double payment of two pensions or a pension and a compensation. Thank you very much. Thank you. Ms. Bullen? Mr. Austin? You have about two and a half minutes. Thank you, Your Honor. I'd briefly like to start with Section 1513B, and Your Honor is exactly correct. The Veterans Court decision is contrary to the clear language of Section 1513B. What the Veterans Court had to do to reconcile the language of 1513B with the decision in Harkness was to put a gloss, an interpretive gloss on the decision. And the way they did that was to say that, okay, if the Section 1521 award is greater than or equal to the award under Section 1513, then they can't have it. But if the Section 1513 award is greater than the Section 1520 award, then Section 1513B does not prevent that. That is not what the language of Section 1513B says. Section 1513B says that you shall get the award that is paid under Section 1521. And if the language said instead you will get the larger of the two or you will only get paid once, then the interpretation they're saying may be correct. But it doesn't say that. They're trying to rewrite the language in an effort to reconcile 1521B with the Harkness decision. And it can't be done because Harkness was incorrectly decided. I'd also like to address the Brown v. Garber issue, which the claimants say is the interpretive method here, that if you look at the statutory language and it's ambiguous that you have to decide it on behalf of the veteran. You have to give the interpretive doubt on behalf of the veteran. That is not what this court said in the Nielsen case. What this court said in the Nielsen case is, of course, let me start off by saying we don't think the language is ambiguous. We think the statutes are clear that our interpretation is correct. But should the court conclude otherwise, you first go to the legislative history. And then if the legislative history doesn't clear it up, you then go to the Chevron deference on the regulations that have been promulgated in this case. And then only if at that point is there doubt. But you didn't bring those regulations up until your reply brief counsel. There's not a single mention of them anywhere else. And we don't consider issues raised for the first time in the reply brief. And the government doesn't usually try and pull that. Well, we did raise it in our opening brief. Where? We talked about Chevron. Show me where the regulations are raised. Show me a single place because they're not in the table of contents. And I couldn't find reference to any regulation in your brief. We raised section 3.351D, the interpretation there. Your Honor is absolutely correct that we did create a greater nuance and observed a greater nuance. Greater nuance? You cut whole plots in the reply brief. But we did it in response to the Brown v. Gardner argument is really the context in which we were raising it. But we did raise section 3.351D. And that is the real regulation here that we're relying on. It not only defined what was meant in section 1521E, but the absence of any demarcation between section 1513 and 1521, unlike the regulations between 1521A. It's also significant. I'm out of time. Thank you, Mr. Austin.